IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
*Electronically filed*

| | |
|---|---|
| JOHN DAVID BOGGS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:16-cv-6-DJH |
| WILLIAM H. MERIDETH, | ) |
| Defendant. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES**

For his Complaint for Declaratory Judgment and Damages against Defendant, Plaintiff, John David Boggs, alleges the following:

**INTRODUCTION**

This case involves the intentional downing of Plaintiff's unmanned aircraft by Defendant. Plaintiff was flying his aircraft within Class G airspace and was neither trespassing nor invading anyone's privacy. Defendant has argued to the media and the courts that he was justified in using physical force to prevent what he perceived as an invasion of privacy and trespass upon his property. A state district court judge, dismissing criminal charges against Defendant, ruled that Defendant acted "within his rights." This turn of events has set the stage for a conflict between state-based claims of trespass to property, invasion of privacy, and trespass to chattles and long standing exclusive federal jurisdiction over the national airspace and the protection of air safety. The tension between private property rights and right to traverse safely the national airspace was resolved during the formative days of manned aviation. The issue is now arising in the context of unmanned aircraft, also known as "drones." Plaintiff seeks a declaratory judgment from this

Court to resolve that tension and define clearly the rights of aircraft operators and property owners.

## PARTIES

1. Plaintiff, John David Boggs, is a resident of Bullitt County Kentucky.

2. Defendant, William H. Merideth, is a resident of Bullitt County Kentucky.

## JURISDICTION AND VENUE

3. This is an action for a declaratory judgment, pursuant to 28 U.S.C. § 2201, for the purpose of determining a question of actual controversy between the parties as more fully appears below. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves issues arising from the laws of the United States. The supplementary state law claims underlying this case implicate significant federal issues. More specifically, plaintiff's right to relief as well as the defendant's defenses, will necessarily require resolution of a substantial question of federal law, to wit, the boundaries of the airspace surrounding real property, the reasonable expectation of privacy as viewed from the air, and the right to damage or destroy an aircraft in-flight, in relation to the exclusive federal regulation and protection of air safety, air navigation, and control over the national airspace.

The Court has supplementary jurisdiction over Plaintiff's claim arising under state law, pursuant to 28 U.S.C. § 1367, because that claim is part of the same case or controversy.

4. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

5. The Federal Aviation Administration ("FAA") has the exclusive authority to govern airspace within the United States and the operation of aircraft. The federal government's

interest in regulating aviation is paramount.  Federal statutes and regulations, including the Transportation Laws of the United States, 49 U.S.C.A. § 40101 *et seq*., and the Airline Deregulation Act, 49 U.S.C.A. § 41713, and the regulations promulgated by the Federal Aviation Administration pursuant to those laws, preempt state law in that area.

6. The FAA's airspace designations state that Class G airspace includes uncontrolled airspace that does not fall within any other classification between the surface and any overlying Class E airspace.  Class G airspace is part of the navigable airspace the regulation of which substantially affects interstate commerce.

7. The FAA defines an "aircraft" as "a device that is used or intended to be used for flight in the air."  14 C.F.R. § 1.1.

8. On July 26, 2015, Plaintiff was operating by wireless controller an unmanned aircraft (also referred to as a "drone") at an altitude of approximately 200 feet above ground level in Class G airspace over Bullitt County, Kentucky.

10. Plaintiff's aircraft contained an onboard camera capable of recording video and still photographs.  Plaintiff's aircraft recorded video of the horizon, woods and the rooftops of various houses.  At no time was Plaintiff capturing video or still images of Defendant or anyone on his property.  Below is the last image recorded by the aircraft prior to being shot by Defendant:



3

11.     After approximately two minutes of flight, Defendant shot Plaintiff's unmanned aircraft down with a shotgun, resulting in damage to Plaintiff's property.  Defendant later alleged that Plaintiff's unmanned aircraft may have been taking video or still images of Defendant's daughter while hovering over Plaintiff's property, thus Defendant asserts he was protecting his family's privacy rights and preventing further trespass.

12.     Defendant was charged by Kentucky authorities with felony wanton endangerment and criminal mischief.  On October 26, 2015, Kentucky District Court Judge Rebecca Ward dismissed the criminal charges against Defendant saying that Defendant "had a right to shoot" at the aircraft.

13.     Defendant, using the nickname "The Drone Slayer," continues to assert that he was justified in shooting Plaintiff's aircraft and vows to do it again, as evidenced by his Facebook page:


https://www.facebook.com/william.merideth.7

14.     Indeed, Defendant has implicitly encouraged others to engage in the same conduct by selling shirts depicted below:

4



15. Given the foregoing, Plaintiff requests a declaratory judgment, as set forth in more detail below.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment)**

16. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as though fully set forth.

17. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights and obligations with respect to the damage caused to Plaintiff's aircraft by Defendant.

18. The United States Government has exclusive sovereignty over airspace of the United States pursuant to 49 U.S.C.A. § 40103. The airspace, therefore, is not subject to private ownership nor can the flight of an aircraft within the navigable airspace of the United States constitute a trespass. Unmanned aircraft are aircraft consistent with Subtitle B of Public Law

112-95 and the existing definition of aircraft in Title 49 of the United States Code, 49 U.S.C. 40102.

19. In addition, even if Plaintiff had viewed the defendant's property from the air, which he did not, such viewing would not violate the defendant's reasonable expectation of privacy according to well established federal law. The U.S. Supreme Court has determined, as a general rule, that there is no reasonable expectation of privacy in the area surrounding a home in plain view from above. *California v. Ciraolo,* 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); *Florida v. Riley,* 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989) (plurality opinion). Resolution of the current dispute between Plaintiff and Defendant requires the application of this existing federal case law to an as yet unexamined technology – unmanned aircraft.

20. Further, Congress has indicated its unambiguous intent to ensure the safety of aircraft. Pursuant to 18 U.S.C.A. § 32, whoever "sets fire to, damages, destroys, disables, or wrecks any aircraft in the special aircraft jurisdiction of the United States or any civil aircraft used, operated, or employed in interstate, overseas, or foreign air commerce" commits a felony. Although this statute may not create a private right of action, the interpretation of the statute is critical to the determination of the claims asserted herein. Should the court determine that this statute applies to unmanned aircraft, as it should, that would leave no room for Defendant's assertion of the right to self-help or the Kentucky District Court Judge's ruling that Defendant was "within his rights" to shoot the aircraft.

21. Conversely, Kentucky law regarding trespass does not specifically address the rights of unmanned aircraft to traverse the skies above private property. It defines a trespasser as "any person who enters or goes upon the real estate of another without any right, lawful authority

or invitation, either expressed or implied." Ky. Rev. Stat. Ann. § 381.231.  A trespasser may be subject to civil suit and/or criminal prosecution.  Kentucky law also permits resort to self-help in response to trespass.  A landowner may use physical force "upon another person when the person believes that such force is immediately necessary to prevent the commission of criminal trespass." Ky. Rev. Stat. Ann. § 503.080.

22. Given the clear conflict of federal and state laws, as applied to the facts of this action, Plaintiff desires a judicial determination of the respective rights and duties of Plaintiff and Defendant with respect to Plaintiff's rights to operate an aircraft within Class G airspace and recover damages for trespass to chattel caused by Defendant's intentional shooting of that aircraft.

23. Plaintiff is, herein, asserting a claim for trespass to chattels as a result of the damages to his aircraft.

24. The ruling of the Kentucky District Court and assertions made by Defendant regarding his belief that his actions were justified because Plaintiff was engaged in trespass and invasion of privacy are in direct conflict with established federal law governing the regulation of manned aircraft and airways and cannot be resolved without addressing how this law applies to unmanned aircraft

25. For those reasons, Plaintiff seeks the following declaratory judgment:

(A) An unmanned aircraft is an "aircraft" according to Federal law.

(B) An unmanned aircraft operating in Class G airspace in the manner alleged above is operating in "navigable airspace" within the exclusive jurisdiction of the United States.

(C) That Plaintiff was operating his unmanned aircraft in the navigable airspace within the exclusive jurisdiction of the United States and not within Defendant's property;

(D)     That the operation of his unmanned aircraft in  in the manner alleged above did not violate the defendant's reasonable expectation of privacy; and

(E)     That a property owner cannot shoot at an unmanned aircraft operating in navigable airspace within the exclusive jurisdiction of the United States when that aircraft is operating in the manner alleged above.

## SECOND CLAIM FOR RELIEF
### (Trespass to Chattels)

26.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs as though fully set forth.

27.     Defendant intentionally intermeddled with personal property in the possession of Plaintiff, specifically, his unmanned aircraft.

28.     Defendant impaired the property as to its condition, quality, to value.

29.     Plaintiff's property was damaged by the reduced value, condition and quality of his aircraft in an amount of approximately $1,500.00.

WHEREFORE, premises considered, Plaintiff demands the following relief:

1.     That the Defendant be served with process and answer the allegations and claims set forth above;

2.     That the court enter the declaratory judgment requested in the First Cause of Action, above; and

3.     That the Court award to the Plaintiff such other legal and equitable relief as it deems appropriate, including monetary damages, prejudgment interest, and the costs of filing this action.

Respectfully submitted,

s/ Thomas C. Gleason
Thomas C. Gleason
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202
(502) 589-5400
(502) 581-1087 fax
tgleason@fbtlaw.com


s/ James E. Mackler
James E. Mackler *(pro hac vice pending)*
William L. Campbell, Jr. *(pro hac vice pending)*
FROST BROWN TODD LLC
150 3rd Ave. S., Suite 1900
Nashville, TN 37201
(615) 251-5550
jmackler@fbtlaw.com
ccampbell@fbtlaw.com

*Attorneys for Plaintiff*