UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:16-CV-00006-TBR

JOHN DAVID BOGGS,                                                           PLAINTIFF

v.

WILLIAM H. MERIDETH                                                          DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on Defendant William H. Merideth's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. [DN 14.] Plaintiff John David Boggs responded. [DN 15.] Merideth replied. [DN 16.] Boggs filed a supplemental pleading in support of his response. [DN 17.] Fully briefed, this matter is ripe for adjudication. For the following reasons, Merideth's motion to dismiss [DN 14] is **GRANTED**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

BACKGROUND

Plaintiff Boggs brought the instant action after Defendant Merideth shot down Boggs' unmanned aircraft, or "drone," with a shotgun. [DN 1.] Plaintiff first seeks a declaratory judgment finding that 1) an unmanned aircraft is an "aircraft" under federal law, 2) an unmanned aircraft operating in Class G airspace is operating in "navigable airspace" within the exclusive jurisdiction of the United States, 3) Boggs was operating his unmanned aircraft in this navigable airspace in the exclusive jurisdiction of the United States, rather than on Merideth's property, 4) the operating of his unmanned aircraft in this manner did not violate Merideth's reasonable expectation of privacy, and 5) a property owner cannot shoot at an unmanned aircraft operating

in navigable airspace within the exclusive jurisdiction of the United States when operating in the manner in which Boggs alleges his unmanned aircraft was operating. [DN 1 at 7–8.] Second, Boggs brings a claim for trespass to chattels under Kentucky state law, for which he seeks damages in the amount of $1,500.00, the amount in which Boggs alleges his unmanned aircraft was damaged by Merideth. [*Id.* at 8.]

Merideth brought the instant motion, alleging that Boggs' complaint merely anticipates defenses Merideth could raise and that Boggs' claim for a declaratory judgment does not provide this Court with subject matter jurisdiction. [DN 14.] Boggs makes several arguments in response, the essence of which is that Boggs was flying his unmanned aircraft in the "sovereign navigable airspace of the United States," and therefore that resolution of his claims in federal court is proper. [DN 15.]

## STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may assert by motion the defense of "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004). Because the parties here do not request that the Court make any factual determinations in ruling on the motion to dismiss, but rather dispute only the sufficiency of Boggs' complaint, the Court "will treat this as a 'facial' 12(b)(1) motion." *Id.* "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Steel Peel Litig.,* 491 F.3d 320, 330 (6th Cir. 2007). "If the court determines at any time

that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.,* 368 F.3d 569 (6th Cir. 2004).

## DISCUSSION

Of the two types of this Court's original jurisdiction, *see* 28 U.S.C. §§ 1331–1332, this case involves the type known as "federal question." [DN 1 at 2.] Pursuant to 28 U.S.C. § 1331, this Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "In order to trigger federal-question jurisdiction under § 1331, a lawsuit must satisfy the well-pleaded complaint rule. Under this rule, a federal question must appear on the face of the complaint rather than as part of a defense, even if a federal-law defense is anticipated." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012). "For statutory purposes, a case can 'aris[e] under' federal law in two ways." *Gunn v. Minton*, ––– U.S. –––, –––, 133 S. Ct. 1059, 1064 (2013). *See also Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 711 (6th Cir. 2012). First, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn*, 133 S. Ct. at 1064 (citing *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)).

Second, even in situations when a plaintiff brings state law claims, the Supreme Court has "identified a 'special and small category' of cases in which arising under jurisdiction still lies." *Id.* These are "state-law claims that implicate significant federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). This type of federal question jurisdiction exists in cases in which "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065 (citing *Grable*, 545 U.S. at 314). When all of the requirements are satisfied, "jurisdiction is proper because there is a

3

'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (citing *Grable*, 545 U.S. at 313–14).

### A. Boggs' State Law Trespass to Chattels Claim

Boggs argues in his response that his Kentucky state law trespass to chattels claim satisfies the requirements for federal question jurisdiction because it "necessarily raises a disputed federal issue" under the *Grable* standard; that is, whether Boggs was flying his unmanned aircraft in federal airspace. [DN 15 at 8–9.] For this proposition, Boggs relies, in part, on the Federal Aviation Administration's (FAA) definition of "aircraft" as "a[ny] device that is used or intended to be used for flight in the air." 14 C.F.R. § 1.1. Additionally, federal law provides that "[t]he United States Government has exclusive sovereignty of airspace of the United States." 49 U.S.C. § 40103. However, as explained in the following analysis, Boggs' state law tort claim still does not satisfy the *Grable* standard of raising "significant federal issues."

### 1. Necessarily Raised

Under Kentucky law, a plaintiff can establish trespass to chattels by showing that another person intentionally dispossessed another of his or her chattel or intentionally used or intermeddled with the chattel of another. *Ingram Trucking, Inc. v. Allen*, 372 S.W.3d 870, 872 (Ky. Ct. App. 2012) (quoting Restatement (Second) of Torts § 217 (1965)). Boggs asserts that, pursuant to the first *Grable* requirement, this claim necessarily raises a federal issue because Merideth will "not be liable for trespass to chattels if his actions were legally privileged." [DN 15 at 8.] For this argument, Boggs cites the Restatement (Second) of Torts, which provides, in part, that

> one is privileged to commit an act which would otherwise be a trespass to a chattel or a conversion if the act is, or is reasonably believed to be, necessary to

4

> protect the actor's land or chattels or his possession of them, and the harm inflicted is not unreasonable as compared with the harm threatened.

Restatement (Second) of Torts § 260 (1965); [DN 15 at 8.] Boggs claims that if the unmanned aircraft was flying on Merideth's property, his actions may have been privileged, but if it was flying in federal airspace, they would not. [DN 15 at 8–9.] Moreover, Boggs asserts "his own legal privilege – the right to be [sic] fly an aircraft in federal navigable airspace free from interference by landowners." [*Id.* at 8–9.] However, the Court is not persuaded that claims of privilege regarding the airspace in which Boggs' unmanned aircraft was flying *necessarily* raise a disputed federal issue.

As an initial matter, it appears that, under Kentucky law, claims of privilege are *defenses* to tort claims. *See Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. Ct. App. 2011) ("A privilege is recognized as a defense to a defamation claim; the defense may be either absolute or qualified."); *Ronald A. Chisholm, Ltd. v. Am. Cold Storage, Inc.*, No. 3:09-CV-00808-CRS, 2013 WL 4499014, at *5 (W.D. Ky. Aug. 20, 2013) ("[Defendant] contends, and the court agrees, that the Restatement outlines and provides [defendant] an affirmative defense to [plaintiff]'s claim . . . that [the privilege of] consent is a complete defense to a claim for trespass to chattels."); *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 183 (Ky. Ct. App. 2014) ("[Defendants] filed motions to dismiss appellees' original complaint . . . arguing various defenses including that the claims depend on the judicial statements privilege.").

To the extent Boggs anticipates a defense of privilege that Merideth may raise in response to Boggs' trespass of chattels claim, Merideth argues, [DN 16 at 4], and the Court agrees, that the law is clear that "[f]ederal question jurisdiction is absent when 'the right to be vindicated is State-created' and the action was 'brought into the federal courts merely because an anticipated defense derived from federal law.' *Bell & Beckwith v. IRS*, 766 F.2d 910, 915 (6th

5

Cir. 1985) (quoting *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 673 (1950)). *See also Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 12 (1983) (Explaining that federal courts do not obtain federal question jurisdiction "on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.")) Based on the foregoing, it appears to the Court that Boggs not only anticipates Merideth's potential defense that his conduct was privileged due to a need to protect his property, but he goes one step further and anticipates his own *response* to that potential defense—that the privilege does not apply because Boggs was flying his unmanned aircraft in federal airspace rather than on Merideth's property. That Boggs may anticipate the need to argue this does not render his standard trespass to chattels claim one that necessarily raises "significant federal issues." *See Caterpillar*, 482 U.S. at 398–99 ("[T]he presence of a federal question . . . in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint."). Accordingly, the Court is unpersuaded that the issue of whether Boggs' unmanned aircraft was flying in federal airspace for purposes of determining whether Merideth's actions were privileged is an issue "necessary" to Boggs' trespass to chattels claim. *Gunn*, 133 S. Ct. at 1065.

2. **Actually Disputed**

Nor is the Court persuaded that a federal issue is actually disputed. *Id.* at 1065–66. Although Boggs asserts that he operated his unmanned aircraft on federal, rather than private, property, Merideth has not responded to the substance of that argument. However, as the Court will discuss below, resolution of this point is ultimately unnecessary.

### 3. Substantial

Even if Boggs were correct that a federal issue is necessarily raised and actually disputed, his argument would still fail *Grable*'s next requirement; that is, that the disputed federal issue must be substantial. *Id.* at 1066. This inquiry asks not whether "the federal issue [is] significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires." *Id.* Rather, a finding of substantiality requires an analysis of "the importance of the issue to the federal system as a whole." *Id.* Boggs makes several arguments as to why the alleged federal question is substantial, including that a resolution of the issue will have an impact on federal aviation law, the FAA's ability to regulate air safety and navigation, and the developing body of law regarding the impact of unmanned aircrafts on privacy and property interests. [DN 15 at 9–11.] However, Boggs has not persuaded the Court that resolution of the simple issue of whether Boggs' unmanned aircraft was flying on Merideth's property, as opposed to federal property, for the ultimate purpose of determining Merideth's liability for a state law trespass to chattels claim, is "significant to the federal system as a whole." *Gunn*, 133. S. Ct. at 1068.

Here, Boggs has brought a "garden-variety state tort claim." *Hampton*, 683 F.3d at 712. Although Boggs asserts that, in addressing Boggs' response to a potential privilege defense from Merideth, a state court could have to determine "the boundaries of federal airspace," [DN 15 at 9], this is insufficient for a finding of substantiality. *See Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, Local 704*, 25 F.3d 1308, 1309 (6th Cir. 1994) ("As in other cases in which a defendant asserts a defense based on a federal constitutional, statutory, or administrative provision, the state court may have to interpret some text affected by federal law. But this neither invokes removal jurisdiction nor divests the

state court of its normal authority to adjudicate a case that contains an issue touching upon federal law.") The Sixth Circuit has noted that the Supreme Court has

> identified four aspects of a case or an issue that affect the substantiality of the federal interest in that case or issue: (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007) (citing *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)).

First, Boggs concedes that a federal agency is not involved in this case, nor is a federal agency's compliance with a federal statute in dispute. [DN 15 at 10.] Boggs contends, however, that resolution of his trespass to chattels claim "directly impacts the FAA's ability to enforce regulations regarding air safety and navigation." [*Id.*] The Court disagrees. As the Sixth Circuit explained in *Mikulski*, "[w]hile the federal government may have an interest in the uniform application of regulations that relate to the collection of taxes, it has only a limited interest in private tort or contract litigation over the private duties involved in that collection." *Mikulski*, 501 F.3d at 570 (citing *Grable,* 545 U.S. at 319). Similarly, here, although the FAA certainly has an interest in enforcing its regulations governing federal airspace, its interest in applying those regulations in the context of a state law tort claim for trespass to chattels is limited or nonexistent. Moreover, "[u]nlike [in] *Grable*, . . . this case will have no *res judicata* effect that would apply to the [FAA], no matter which court, federal or state, decides the case." *Id.*

This is in contrast to *Huerta v. Haughwout*, a case filed in the District of Connecticut to which Boggs directed the Court's attention in his supplemental pleading. No. 3:16-CV-358, 2016 WL 3919799, at *1 (D. Conn. July 18, 2016); [DN 17.] In that case, the FAA sought judicial

8

enforcement of administrative subpoenas it served against the defendants after they allegedly operated drones to fire a handgun and a flame-throwing contraption. *Huerta*, 2016 WL 3919799, at *1–2. The court explained the FAA had the authority "to conduct an investigation on its own initiative *either* if a 'reasonable ground appears' to believe that a person is 'violating' the Federal Aviation Act (or one of the FAA's regulations) *or* if a 'reasonable ground appears' about 'any question that may arise' under the Act or the FAA's regulations." *Id.* at *2 (quoting 49 U.S.C. § 46101(a)(2)). And, as FAA regulations prohibit "operat[ing] an aircraft in a careless or reckless manner so as to endanger the life or property of another," the court agreed that "the weaponized devices shown on the YouTube videos at least give rise to questions about possible danger to life or property." *Id.* (quoting 14 C.F.R. § 91.13).

The Court disagrees that this case "highlights, as argued by Mr. Boggs — and now the FAA — that questions involving the regulation of the flight of unmanned aircraft should be resolved by Federal courts." [DN 17 at 2.] Rather, *Huerta* concerned the FAA's authority to exercise its subpoena power and its ability, pursuant to 29 U.S.C. § 46101(b), to seek judicial enforcement of those subpoenas in federal court. *Huerta*, 2016 WL 3919799, at *2. That Court did not make the ultimate determination that the defendants' unmanned aircrafts were in fact subject to FAA regulations. In fact, the court expressed serious skepticism as to whether all unmanned aircrafts are subject to FAA regulation. *Id.* at *4 ("Were this a penalty enforcement action against the [defendants] for flying drones on their own property, I could see that the [defendants] have raised substantial questions about the scope of the FAA's regulatory enforcement authority.") Rather, the court merely held that, "[e]ven if a good faith argument might be made that the devices at issue here could fall outside the definitional scope of the term "aircraft," the FAA has a legitimate purpose at the least to acquire more information by means of

9

investigation . . . ." *Id.* at *3. But even if Boggs is correct that his unmanned aircraft *is* subject to federal regulation, as the Court noted above, the fact remains that the FAA has not sought to enforce any such regulations in this case. Moreover, FAA regulations, at most, would constitute ancillary issues in this case, in which the heart of Boggs' claim is one for damage to his unmanned aircraft under Kentucky state law.

The second factor asks whether the federal issue, provided that one exists, is important. *Mikulski*, 501 F.3d at 570. If, as Boggs suggests, a state court is ultimately required to interpret or apply federal law, it will be for the limited purpose of determining whether his unmanned aircraft was on Merideth's property such that Meredith could have been privileged in damaging Boggs' chattel. "This question does not implicate any broader or more substantial issue," *id.* at 571, as Boggs argues. Moreover, even that determination "does not necessarily even resolve all aspects of the present case," *id.*, because, as Meredith points out, a state court would still have to address the other requirements for application of the privilege, such as the reasonable belief in the need to defend property and the reasonable infliction of harm to the chattel. [DN 16 at 5]. *See* Restatement (Second) of Torts § 260 (1965) (The actor's conduct must be, or "reasonably believed to be, necessary to protect the actor's land . . . and the harm inflicted [must] not [be] unreasonable as compared with the harm threatened."). These are issues entirely within the purview of the state court in applying its law on privileges. Though Boggs argues that Congress and the FAA have been actively involved in modern drone regulation, [DN 15 at 10–11], the federal government's ability to regulate unmanned aircrafts will "not [be] affected by the resolution of the dispute between these two parties." *Mikulski*, 501 F.3d at 570. Accordingly, the Court "find[s] it more likely than not that this particular question is not particularly important to the federal government." *Id.* at 571.

The third factor, whether a resolution of the federal issue is dispositive of the case, *id.* at 570, also weighs against a finding of substantiality. As the Court noted above, whether Boggs' unmanned aircraft was on Merideth's property would be only one question in the analysis of whether Merideth's actions were privileged by a reasonable belief in the need to protect his land. For instance, regardless of what a state court determined in that regard, it could still be that the privilege does not apply because other required elements are not met. If the privilege does not apply, Boggs' claim will then depend on whether he proved the elements of his prima facie case. Accordingly, a resolution of this issue "may, but will not necessarily," decide Boggs' trespass to chattels claim. *Id.* at 571.

The fourth and final factor asks whether resolution of "the federal question will control numerous other cases." *Id.* at 570. In other words, this factor looks to whether the federal issue is "anomalous or isolated." *Id.* Neither the Court nor the parties are aware of any other pending suits involving the issue of whether an unmanned aircraft was operating on federal or personal property, [*see* DN 15 at 11], and it therefore it does not appear to the Court that this question will "control" many future cases. Boggs contends, however, that a resolution of the issue will "control and even prevent future cases," and "will provide legal clarity to property owners and aircraft operators." [*Id.*] Even assuming, for argument's sake, that Boggs is correct, the Court nonetheless finds that, because the other three factors weigh against a finding that the federal issue is substantial, this factor is insufficient to tip the balance. In sum, while resolution of this question might be important to the parties, it lacks significance to the federal system as a whole, and therefore does not meet the substantiality requirement.

11

### 4. Capable of Resolution in Federal Court Without Disrupting the Federal-State Balance Approved by Congress

It follows from an analysis of the foregoing three requirements that *Grable*'s fourth requirement is also not met here. "That requirement is concerned with the appropriate 'balance of federal and state judicial responsibilities.'" *Gunn*, 133 S. Ct. at 1068 (citing *Grable*, 545 U.S. at 314). As the Court held above, no substantial federal issue exists here. Though, as Boggs argues, the federal government "has exclusive sovereignty of airspace of the United States," 49 U.S.C. § 40103, that sovereignty is not a *significant* issue in the determination of whether Merideth intentionally intermeddled with Boggs' chattel under Kentucky law. *Ingram Trucking*, 372 S.W.3d at 872 (quoting Restatement (Second) of Torts § 217 (1965)). Accordingly, using a federal forum to resolve Boggs' garden variety state tort claim is inappropriate, and the appropriate balance of federal and state judicial responsibilities favors dismissal of Boggs' trespass to chattels claim for lack of federal question jurisdiction. *Gunn*, 133 S. Ct. at 1068.

### B. Boggs' Request for Declaratory Judgment

Boggs additionally seeks declaratory relief in this case pursuant to 28 U.S.C. § 2201. [DN 1 at 2.] Specifically, Boggs seeks a declaration that his unmanned aircraft is an "aircraft" under federal law, that he was flying his unmanned aircraft in federal airspace, that the aircraft was therefore not flying on Merideth's property, that Boggs did not infringe on Merideth's reasonable expectation of privacy, and that property owners cannot shoot at unmanned aircrafts flying in federal airspace. [DN 1 at 7–8.] Boggs argues in his response that, after finding federal question jurisdiction is proper over Boggs' trespass to chattels claim, the Court may exercise supplemental jurisdiction over Boggs' claims for declaratory relief. [DN 15 at 13]; 28 U.S.C. § 1367. However, as the Court concluded above, it does not have federal question jurisdiction over Boggs' trespass to chattels claim. Accordingly, the Court must determine whether some other

mechanism provides it with jurisdiction over Boggs' declaratory judgment action. *See United States v. Field*, 756 F.3d 911, 914 (6th Cir. 2014) ("'Supplemental' or 'pendant' jurisdiction applies to *claims* asserted in a *pending* federal court case." (emphasis added)).

But, as Merideth points out, the purpose of the Declaratory Judgment Act "is to create a remedy for a preexisting right enforceable in federal court. It does not provide 'an independent basis for federal subject matter jurisdiction.'" *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 902 (6th Cir. 2014) (citing *Toledo v. Jackson,* 485 F.3d 836, 839 (6th Cir. 2007); *Skelly Oil,* 339 U.S. at 671–72). Rather, in order for this Court to have subject matter jurisdiction over an action for declaratory judgment, it must be that, "at the time of the lawsuit, one of the parties already could bring a 'coercive' action that Congress authorized the federal courts to hear." *Id.* (citing *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014) (Courts "ask whether 'a coercive action' brought by 'the declaratory judgment defendant' . . . 'would necessarily present a federal question.'")); *Franchise Tax Bd.*, 463 U.S. at 19 ("Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.") *See also Chase Bank*, 695 F.3d at 554 ("In the declaratory-judgment context, whether a federal question exists is determined by reference to a hypothetical non-declaratory suit (i.e., a suit for coercive relief) between the same parties; if a federal question would appear in the complaint in this hypothetical suit, federal jurisdiction exists over the declaratory-judgment action.") Although Boggs identified this standard in his response, neither he nor Merideth applied the standard in their briefs to the Court. [*See* DN 14; DN 15 at 14; DN 16.]

13

"A party may bring a 'coercive action' only when a private right of action authorizes the party to seek 'an immediately enforceable remedy like money damages or an injunction.'" *Michigan Corr. Org.*, 774 F.3d at 902 (quoting *Skelly Oil,* 339 U.S. at 671). Accordingly, the relevant inquiry for the Court here is whether, if one of the parties brought a coercive action against the other if declaratory judgments were not available, a federal issue would inhere on the face of that hypothetical complaint.

Other than the coercive action Boggs *did* bring, that is, his claim for trespass to chattels, over which the Court has determined it does not have federal question jurisdiction, Boggs has pointed to no other private right of action he could assert against Meredith for harm to his unmanned aircraft, and the Court can think of none. At most, Boggs cites in his complaint to 18 U.S.C. § 32, a criminal statute which makes it a felony to willfully "set[] fire to, damage[], destroy[], disable[], or wreck[] any aircraft in the special aircraft jurisdiction of the United States or any civil aircraft used, operated, or employed in interstate, overseas, or foreign air commerce." [DN 1 at 6 (citing 18 U.S.C. § 32).] However, "[a] party may bring a 'coercive action' only when a *private right of action* authorizes the party to seek 'an immediately enforceable remedy like money damages or an injunction.'" *Michigan Corr. Org.*, 774 F.3d at 902 (citing *Skelly Oil,* 339 U.S. at 671) (emphasis added). This criminal statute affords private citizens no such authorization. Therefore, any coercive action Boggs could bring cannot serve as the basis for federal question jurisdiction over his declaratory judgment action.

With regard to potential coercive actions that Merideth could bring, two causes of action appear plausible to the Court based on the declaratory relief Boggs seeks. These are invasion of privacy and trespass, both tort claims under Kentucky law.[1] Under Kentucky law, the right of

---

[1] A coercive action by Merideth against Boggs for invasion of privacy arises under state, rather than federal law, because only "government actors [are] subject to the strictures of the Fourth Amendment['s]" reasonable

14

privacy can be invaded by "(a) unreasonable intrusion upon the seclusion of another ...; or (b) appropriation of the other's name or likeness ...; or (c) unreasonable publicity given to the other's private life ..., or (d) publicity that unreasonably places the other in a false light before the public ..." *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981) (quoting the Restatement (Second) of Torts (1976)).

"Trespass [under Kentucky law] is an intended or negligent encroachment onto another's property that is not privileged." *Dickens v. Oxy Vinyls, LP*, 631 F. Supp. 2d 859, 864 (W.D. Ky. 2009) (citing *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 619–20 (Ky. Ct. App. 2003)). Specifically, trespass "focuses on an object or thing entering a person's property and interfering with his or her possession or control." *Id.* (citing *Bartman v. Shobe,* 353 S.W.2d 550, 555 (Ky. 1962)). But whether or not either of these claims "necessarily raises" a disputed federal issue, for largely the same reasons as Boggs' trespass to chattels claim, these hypothetical invasion of privacy and trespass claims fail *Grable*'s "significant federal issues" analysis for lack of substantiality. Specifically, as with Boggs' trespass to chattels claim, whether Boggs' aircraft was on Merideth's property or federal property is not significant to the federal system as a whole. *Gunn*, 133 S. Ct. at 1066.

Again, as the Court already discussed above, the FAA is not involved in this case, nor is the Court convinced that a federal question, if one exists in these hypothetical actions, is "important" to the federal government. *See Mikulski*, 501 F.3d at 570. Next, a determination of the property on which Boggs was flying his unmanned aircraft would not be dispositive of an invasion of privacy or trespass claim. *See id.* For instance, if a court determined that Boggs' aircraft *was* flying on Merideth's property, those claims would still require a determination of

---

expectation of privacy standard. *Ferguson v. City of Charleston*, 532 U.S. 67, 76 (2001). No government actor is involved in this case.

whether any such intrusion was "unreasonable" or interfered with Merideth's possession or control of his land. Finally, there is again no evidence that resolution of this issue would control other cases. *Id.* Unlike in *Grable*, the hypothetical Plaintiff here, Merideth, would not "premise" his state law invasion of privacy or trespass claims on a violation of federal law. *Grable*, 545 U.S. at 314. Rather, these hypothetical claims would sound in "garden-variety state tort" law. *Hampton*, 683 F.3d at 712. Moreover, the law is clear that "[t]he mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction, either originally or on removal." *Mikulski*, 501 F.3d at 565. Therefore, even if a potential federal issue here is "significant to the particular parties in the immediate suit," *Gunn*, 133 S. Ct. at 1066, it does not satisfy *Grable*'s requirement that the issue be significant to the overall federal system. Accordingly, here, "[n]ot one of these potential sources of rights . . . supplies the requisite jurisdiction for this action," *Michigan Corr. Org.*, 774 F.3d at 902, and therefore federal question jurisdiction over Boggs' claim for declaratory judgment also does not exist.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction [DN 14] is **GRANTED**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

cc: Counsel